JOHN E. PHILLIPS, as Receiver, etc., Appellant, *v.* THE MERCANTILE NATIONAL BANK of the City of New York, Respondent.

Where the cashier of a bank having the power to bind it by his checks, for the purpose of converting its funds to his own use, drew checks as cashier upon defendant, with whom his bank had a deposit account, making them payable to persons who were dealers with the bank, but without their knowledge, and then indorsed them in the names of the payees, to parties who collected them from defendant, *held*, that so far as defendant was concerned the intent of the cashier was the intent of his bank; that the payees were to be considered as fictitious persons; and that said bank was so far concluded by the acts of its cashier as to be estopped from denying the validity of the checks.

*Shipman* v. *Bank of State of New York* (126 N. Y. 318), distinguished. Reported below, 67 Hun, 378.

(Argued December 22, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 17, 1893, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George W. Wingate* for appellant. The dismissal of the complaint, on the ground that the indorsement by Bartlett of the name of the payees upon the checks which he had drawn as cashier to the order of Brown & Stubbs was not forgery, was error. (*Miller* v. *People*, 52 N. Y. 305; 3 Chitty Crim. Law, 1022; 2 Bishop Crim. Law, §§ 432, 495; 2 Archbold Crim. Pl. & Pr. 552; *Harris* v. *People*, 9 Barb. 664; 8 id. 560; *People* v. *Shall*, 9 Cow. 778; *People* v. *Cady*, 6 Hill, 490; 2 East P. C. 19; 2 Leach, 909; 2 Russell on Cr. 327; *Rex* v. *Taylor*, 2 East P. C. 960; 1 Leach, 255; Bayl. on Bills, 434, 436; *Rex* v. *Francis*, R. & R. Cr. Cas. 209; *Peacock's Case*, Id. 278, 283; *People* v. *Peacock*, 6 Cow. 72; *Rex* v. *Mazagora*, R. & R. Cr. Cas. 291; *Rex* v. *Sheppard*, Id. 167; *People* v. *Rathbun*,

21 Wend. 509, 521; *Comm.* v. *Costello*, 120 Mass. 371; 2 East P. C. 941; *Mead* v. *Young*, 4 T. R. 28; *Reymer* v. *Rogers*, 8 C. & P. 629; *Rex* v. *Whiley*, R. & R. 90; *Comm.* v. *Foster*, 114 Mass. 311; *People* v. *Stearns*, 21 Wend. 409, 413; *Regina* v. *Glach*, 9 C. & P. 499; *Brown* v. *People*, 8 Hun, 562; *Comm.* v. *Henry*, 118 Mass. 460; *Comm.* v. *Tenney*, 97 id. 59.) Both the Special and General Terms were in error in holding that because a cashier is authorized to bind his bank by drafts which he issued in its name and signs as its cashier, that that makes him the bank, so that his intention thereafter to forge the indorsements of the payees, is the intention of his bank, as if he was making and putting in circulation a personal obligation. (Chitty on Bills, 254; *Babcock* v. *Beman*, 11 N. Y. 200; *Bank of Genesee* v. *P. Bank*, 13 id. 309, 315; 19 id. 312, 319; *C. N. Bank* v. *Clark*, 139 id. 307, 313; *Robinson* v. *C. N. Bank*, 86 id. 404, 407; *N. S. L. S. Bank* v. *S. C. Bank*, 95 U. S. 557; *Wilson* v. *M. E. R. R. Co.*, 120 N. Y. 145; *U. S.* v. *Bank of Columbus*, 21 How. [U. S.] 364; *Shipman* v. *Bank of N. Y.*, 126 N. Y. 318; *Horstman* v. *Henshaw*, 11 How. [U. S.] 183; *F. N. Bank* v. *Christopher*, 11 Vroom, 435; *L., etc., Ins. Co.* v. *Bell*, 22 Barb. 54, 62; *W. Bank* v. *Lewis*, 22 Pick. 24; *C. Bank* v. *Cunningham*, 24 id. 270; *W. B. S. Bank* v. *Thompson*, 124 Mass. 506; *Platt* v. *B. A. Co.*, 41 Conn. 255; *N. S. Bank* v. *Cushman*, 121 Mass. 49.) The General Term was in error in holding that these checks were to be considered as drawn in the name of a fictitious person. (*L. M. Bank* v. *U. Bank*, 128 U. S. 26; *Rowe* v. *Putnam*, 131 Mass. 281; *Shipman* v. *Bank*, 126 N. Y. 323, 327; *Frank* v. *C. Bank*, 84 id. 207; *Welsh* v. *G. A. Bank*, 73 id. 424; *Weisser* v. *Denison*, 10 id. 68; *Beeman* v. *Duck*, 11 M. & N. 251; *Rogers* v. *Ware*, 2 Neb. 29; *Cranford* v. *W. S. Bank*, 100 N. Y. 53; *F. N. Bank* v. *Whitman*, 94 U. S. 347; *Bank* v. *Bank*, 91 N. Y. 106, 111; *C. E. Bank* v. *N. Bank*, Id. 80.) The equities of the case are all with the plaintiff. (*Bank of Commerce* v. *Union Bank*, 3 N. Y. 237.) The failure of the bank to ascertain

that the indorsements upon the checks in suit were forgeries, and to notify the Mercantile Bank thereof, was not negligence on its part, which debars it from maintaining this action. (*Weisser* v. *Denison,* 10 N. Y. 69; *Schmidt* v. *G. N. Bank,* 64 Hun, 298; *People* v. *Bank of N. A.,* 75 N. Y. 561.) When the propriety of a nonsuit is in question plaintiff is entitled to the benefit of all the conclusions the jury would have been warranted in drawing from the facts proved. (*Morss* v. *Osborn,* 64 Barb. 543; *Galvin* v. *Mayor, etc.,* 112 N. Y. 223; *Valentine* v. *Richards,* 39 N. Y. S. R. 38; *Weil* v. *D. D., E. B. & B. R. Co.,* 119 N. Y. 147; *Thompson* v. *Lumley,* 50 How. Pr. 105; *McNally* v. *P. Ins. Co.,* 137 N. Y. 389.)

*Charles A. Davison* for respondent. The act of writing the names of the payee on the back of the check by the drawer was not forgery. (*Mann* v. *People,* 15 Hun, 155; *Com.* v. *Baldwin,* 77 Mass. 197; *Rex* v. *Ackles,* 1 Leach C. C. 438; *Reg.* v. *Martin,* 1 L. R. C. C. 244.) The parties named as payees of the checks having no interest in the checks and being strangers to the transaction, and it not being intended that they should become parties to the checks, were fictitious persons, and the checks were, therefore, in law payable to bearer. (Daniels on Neg. Inst. 44; *Pletz* v. *Johnson,* 3 Hill, 112; *Marriote* v. *Roberts,* 3 E. D. Smith, 83; *Coggill* v. *A. E. Bank,* 1 N. Y. 17, 113; *Shipman* v. *Bank of New York,* 126 id. 318; *N. Y., N. H. & H. R. R. Co.* v. *Schuyler,* 34 id. 30; *Oddie* v. *Bank of New York,* 45 id. 735; *C. Bank* v.*Bank of the Commonwealth,* 50 id. 575; *Hortsman* v. *Henshaw,* 11 How. [U. S.] 177.) The Sumter National Bank, as well as the plaintiff, is estopped from denying the genuineness of the indorsement. (*Hortsman* v. *Henshaw,* 11 How. [U. S.] 177.) The account between the Sumter Bank and the defendant, having been from time to time stated and settled between the two banks, in the course of which the checks in question were returned to the Sumter Bank and retained by it, cannot be opened

except for fraud or error. (*Bank of the United States* v. *Bank of Georgia*, 10 Wheat. 333 ; *C. Bank* v. *Bank of the Commonwealth*, 50 N. Y. 575.) The directors were guilty of negligence in the management of the bank by means whereof the cashier was enabled to perpetrate the frauds in question. (*Cutting* v. *Marlow*, 78 N. Y. 460; *Preston* v. *Prather*, 137 U. S. 608 ; *Griswold* v. *Haven*, 25 N. Y. 599.)

GRAY, J. The plaintiff is the receiver of the National Bank of Sumter, in South Carolina, and through this action seeks to recover a balance alleged to be due on a deposit account with the defendant bank. The question presented by the record is whether certain twelve checks, drawn by the cashier of the Sumter bank, which were paid by the defendant bank, could properly be debited in account to the Sumter bank. Bartlett, its cashier, had drawn them upon the defendant for various amounts ; some to the order of A. S. Brown and some to the order of C. E. Stubbs. In the check book he would enter sometimes the real amount of the checks and sometimes an amount much less than the checks actually were drawn for. The names of these payees were those of persons who actually resided in Sumter and were dealers with the bank ; but they knew nothing of these checks and had no connection whatever with the transactions of the cashier in issuing these checks. Bartlett, after having drawn the checks, indorsed them in the name of the payee ; making them payable to the order of some firm of stock brokers in New York, who collected them from the defendant. By subsequent manipulations of the books of his bank, Bartlett was able to prevent a discovery of his dishonest acts, until after he had absconded and the insolvency of the bank was disclosed. The learned trial judge, in dismissing the complaint, discussed the question of what the act of the cashier of the Sumter bank amounted to in law. In his judgment, the cashier's indorsement of the checks in the name of the payee, which he had written in the body of the check, was not, in a legal

sense, forgery. He said that act did not defraud the persons whose names were used as payees, nor the bank in New York, nor his own bank; but that the fraud consisted in the unlawful drawing of the check for his own purposes, with the intent to convert his own bank's funds. Regarding the transaction in that light, and the indorsement as a part of one continuous act of preparing the check so that the New York bank should pay the funds drawn upon to the indorsees, he very properly reached the conclusion that, so far as the New York bank was concerned, the cashier's intent was the intent of his bank and, hence, the payment of the checks was conclusive upon it.

At the General Term, the opinion of the court again carefully reviews the legal questions and sustains the judgment below. Upon the question of the effect upon the transaction of the use by Bartlett of names, as payees, of persons who were customers of the bank, it is said in the opinion that that fact did not prevent the application of the principle which would govern, if fictitious names had been selected and used for payees. They held, in substance, that the bank, through its authorized officer, had put in circulation paper, with knowledge chargeable to it that the names of the payees did not represent real persons, and with the intention to indorse thereon the names of the payees; who, for all intents and purposes, were fictitious payees, and whose names were adopted and resorted to as a device to avoid suspicion.

We think the judgments below were right. Whether indorsing the check in the name of the payee therein was a forgery in the legal sense, or not, is not the important question. In a general sense, of course, the cashier did forge the payee's name, but that fact did not affect the title or rights of the defendant. (*Coggill* v. *American Exchange Bank*, 1 N. Y. 113.) In the case cited, a bill was drawn upon the plaintiff to the order of one Truman Billings and was discounted at a bank. The drawer had indorsed it with the name of the payee, Truman Billings; a person who in fact had no interest in the bill. It was held that the defendant in the case, who had accepted and paid the bill, held it by a good title. BRON-

SON, J., said : " As the payee had no interest and it was not intended that he should ever become a party to the transaction, he may be regarded, in relation to this matter, as a nonentity, and it is fully settled that when a man draws and puts into circulation a bill, which is payable to a fictitious person, the holder may declare and recover upon it as a bill payable to bearer. In legal effect, though not in form, the bill is payable to bearer."

The case of *Shipman* v. *Bank of the State of New York* (126 N. Y. 318), which was recently before us, did not decide any question inconsistently with what the courts below have decided. There it had been found that the checks were signed by the firm, in the belief that the names of the payees represented real persons entitled to receive the amounts of the checks, and with the intention that they should be delivered to real payees and should not go into circulation otherwise than through a delivery to and an indorsement by the payees named. Bedell was their clerk, whose employment did not comprehend the drawing or indorsing of checks or drafts ; and, in indorsing upon the checks the names of the payees, he committed the crime of forgery, because he was without authority in that respect and did so with the intention to deceive his employers, the makers, and to put their checks in circulation for his account. That was a case wholly other than was made out here. It was stated in the *Shipman* case that the maker's intention is the controlling consideration, which determines the character of the paper, and that the statutory rule, which gives to paper drawn payable to the order of a fictitious person, and negotiated by the maker, the same validity as paper payable to bearer, applies only when such paper is put into circulation by the maker with knowledge that the name of the payee does not represent a real person. The principle of that decision is quite applicable to the case at bar. Though Bartlett selected, for the execution of his dishonest purposes, the names of persons who were dealers with his bank, it was, in legal effect, as though he had selected any names at random. The difference is that, by the methods resorted to,

he averted suspicion on the part of the directors or other officers of his bank. The names he used were, for his purposes, fictitious, because he never intended that the paper should reach the persons whose names were upon them. The transaction was one solely for the fraudulent purpose of appropriating his bank's moneys, by a trick which his position enabled him to perform. Concededly, if the names of the payees were of fictitious persons, the Sumter bank would have had no claim upon the defendant; how, then, can the transaction be said to assume a different aspect because the names adopted were of known persons? That the intention was to treat them as being of fictitious persons is manifest. As cashier, invested with the authority to draw checks upon the bank's accounts with its correspondents, instead of drawing them directly to the order of the parties, who he intended should get the moneys, he drew them to the order of persons who had no interest in them, and thereupon wrote their names under a direction to pay to the real parties, who were intended to be the recipients of the funds drawn upon. If the checks had been drawn directly to the order of the real parties, the defendant would undoubtedly have been protected in paying them. As it was, the payees were fictitious persons in the eye of the law, and the only real parties were the firms in New York, to whom the cashier sent them in such form as that they could draw the moneys upon them.

The fictitiousness of the maker's direction to pay does not depend upon the identification of the name of the payee with some existent person, but upon the intention underlying the act of the maker in inserting the name. Where, as in this case, the intent of the act was, by the use of the names of some known persons, to throw directors and officers off their guard, such a use of names was merely an instrumentality or a means which the cashier adopted, in the execution of his purpose to defraud the bank, in an apparently legitimate exercise of his authority. The cashier, through his office and the powers confided to him for exercise, was enabled to perpetrate a fraud upon his bank, which a greater vigilance of its officers

might have earlier discovered, if it might not have prevented. If his position and the confidence reposed in him were such as to enable him to escape detection for the while, then the consequences of his fraudulent acts should fall upon the bank, whose directors, by their misplaced confidence and gift of powers, made them possible, and not upon others who, themselves acting innocently and in good faith, were warranted in believing the transaction to have been one coming within the cashier's powers.

It may be quite true that the cashier was not the agent of the bank to commit a forgery, or any other fraud of such a nature; but he was authorized to draw or check upon the bank's funds. If he abused his authority and robbed his bank, it must suffer the loss. The distinction between such a case and the many other cases, which the plaintiff's counsel cites from, is in the fact that it was within the scope of this cashier's powers to bind the bank by his checks. In transmitting them, made out and indorsed as they were, the bank was so far concluded by his acts as to be estopped from now denying their validity.

For the reasons given, the judgment should be affirmed, with costs.

All concur, except BARTLETT, J., not sitting.

Judgment affirmed.