THE FIFTH NATIONAL BANK of the City of New York, Plaintiff, *v.* THE CENTRAL NATIONAL BANK of the City of New York, Defendant.

*Check — presumption as to its condition when signed — name of a real person, when used as a fictitious payee, when not so used.*

In the absence of proof it will be presumed that a check when signed was filled in in the same manner that it is at the time when it is produced upon the trial of an action.

Where a check drawn upon a bank is signed by the maker in the belief that the name of the payee represents a real person, entitled to receive the amount of the check, and with the intention that it should be delivered to the real payee, and that it should not go into circulation otherwise than through a delivery to and indorsement by the payee named therein, the rules applicable to checks drawn to fictitious persons do not apply thereto.

MOTION by the defendant, The Central National Bank of the City of New York, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit on the 14th day of May, 1894.

*W. H. Arnoux,* for the plaintiff.

*Gibson Putzel,* for the defendant.

VAN BRUNT, P. J.:

This action was brought to recover the amount of a check which was drawn upon the plaintiff by one of its customers and paid by it to the defendant, the indorsement thereon being claimed to be forged. The check as presented upon the trial was made payable to the order of B. A. & G. N. Williams, Jr., and purported to be by them indorsed. There was no dispute in the evidence that such indorsement had never been made by them or by their authority, and the sole question which was litigated upon the trial was whether the check had been drawn in blank or to a fictitious payee so that it might be considered as a check payable to bearer. The drawer of the check was illiterate and could not read or write except for the purpose of signing his own name, and all his checks were filled out by a bookkeeper in whom he had confidence and who presented them

to him for signature. The drawer has no recollection in respect to the signing of the check in question. He testified that he did not knowingly sign it in blank. He further testified as follows : " It is not possible that I would sign it in blank and leave it with my book-keeper." In another place, when asked : " Did Watson always state to you the names of the payee in the checks presented to you for signature ? A. Not always. Q. Did you, on or about March 26th, 1892, request Watson to fill out a check for B. A. & G. N. Williams, Jr. ? A. I did not, not that I know of ; I don't remember of asking him to fill out a check for Mr. Williams on that date. Q. You don't know ; you don't remember ? A. No, I don't remember." And then, in another place, he says : " I don't remember anything about it."

It is clear, therefore, that the case is utterly devoid of any proof as to the circumstances of the signing of this check. In the absence of proof the presumption is that the check, when signed, was filled in as it is at the present time. The proof also shows that the maker of this check did not intend to make the same payable to bearer or to a fictitious payee ; and in this respect the case differs radically from those which are cited upon the part of the defendant, of which *Phillips* v. *Mercantile Nat. Bank* (140 N. Y. 556) is the latest illustration. In that case the cashier of the defendant bank had authority not only to fill out checks but to sign them, and he made the checks in question in that case payable to persons who were dealers with the bank, but without their knowledge, and then indorsed them in the names of the payees for the purpose of converting the funds of the bank to his own use. Under such circumstances the court held that, so far as the defendant was concerned, the intent of the cashier was the intent of his bank, that the payees were to be considered as fictitious persons, and that the bank was so far concluded by the acts of its cashier as to be estopped from denying the validity of the check. In other words, that where the maker of a check uses as payee the name of an existing party, but does not intend that such party shall indorse the check, but indorses it himself, it is the same as though the name of a fictitious payee had been used, the intent being not to issue the check to the payee. In the case at bar there is no such proof. There was no intent upon the part of the maker to sign the check to a fictitious payee. The only construction

that can be placed upon the testimony of the drawer of the check is that he has no recollection of signing the check in blank and that he did not intend to make it payable to any fictitious payee.

In this respect the case at bar is similar to the case of *Shipman* v. *The Bank of the State of New York* (126 N. Y. 318), and differs from the case of *Phillips* v. *Mercantile Nat. Bank* (*supra*). In the case of *Shipman*, although fictitious names were used by the clerk, the checks were signed by the firm in the belief that the names of the payees represented real persons entitled to receive the amount of the checks and with the intention that they should be delivered to real payees, and should not go into circulation otherwise than through a delivery to and an indorsement by the payees named.

In the case at bar, as already stated, there is no evidence but that the drawer of the check intended that it should be delivered to the payees, and there was no intention upon his part to make the same payable to a fictitious payee.

Attention might be called to other cases similar to that of *Phillips* v. *Mercantile Nat. Bank*, but the case cited sufficiently illustrates the rule and points the distinction between it and the case at bar.

The exceptions should be overruled and the plaintiff have judgment upon the verdict, with costs.

FOLLETT and PARKER, JJ., concurred.

Exceptions overruled, judgment ordered on verdict for plaintiff, with costs.